The Chicago and Alton Railroad Company

*v.*

C. G. Pearson, Admx.

*Opinion filed February 19, 1900.*

1. Railroads—*what evidence tends to sustain charge of negligence in operating train.* Evidence that the train which struck deceased was running about thirty miles an hour, that the public crossing where he was killed was near the center of the village and was the one most used for travel, and that the statutory signals were not given, tends to sustain charges of negligence in operating the train, and thereby raises a question of fact for the jury.

2. Same—*what does not tend to establish negligence in obstructing view.* Evidence of the presence of telegraph poles and wires on the right of way, of smoke and steam from a passing train on another track, and of cars stored upon a side-track, does not tend to establish charges of negligence in obstructing the view.

3. Same—*failure "to look and listen" may be excused by circumstances.* One approaching a public crossing must use such care as an ordinarily prudent person would exercise under the circumstances; but while such care ordinarily demands the use of sight and hearing, yet it cannot be said, as a matter of law, that failure to look and listen is negligence *per se* under all circumstances.

4. Same—*whether failure "to look and listen" is negligence is for the jury.* Whether the failure of deceased to look and listen before stepping upon the tracks at a public crossing is excused by the circumstances shown to have surrounded him at the time, is a question of fact to be submitted to the jury.

5. Evidence—*when evidence of habits is not admissible.* Evidence of the habits of deceased with reference to temperance is inadmissible in an action for damages for his death, where the fact whether he was under the influence of liquor at the time of his death is capable of direct proof by witnesses who saw him at and just before the time of the accident.

6. Trial—*court may substitute proper question for special finding, of its own motion.* It is within the power of the trial court to substitute a proper question for a special finding, on its own motion.

7. Special interrogatories—*what a proper change in special interrogatories.* Substitution of the question whether deceased, "in view of the physical surroundings at the time of the injury," was in the exercise of ordinary care for his own safety, for interrogatories asking if what deceased did to ascertain whether a train was approaching was what an ordinarily prudent man would have done, and whether an ordinarily prudent man would have stepped upon the track without looking for trains, is proper.

8. APPEALS AND ERRORS—*what does not render verdict void.* A verdict finding the defendant guilty of negligence under specified separate counts is not void on the ground it should have specified one count only, though the several causes of injury were not alleged in combination, but separately.

9. SAME—*when sustaining objection to question is not error.* Sustaining an objection to a question whether the witness knew of any reason why the deceased had not the same opportunity as the witness for seeing an approaching train is not error, where the defendant was allowed to show that there was nothing whatever to prevent the deceased from seeing the train if he had looked.

Special concurrence by MAGRUDER, J.

*Chicago and Alton R. R. Co.* v. *Pearson*, 82 Ill. App. 605, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding.

C. C. & L. F. STRAWN, ANTOINETTE FUNK, M. J. SCRAFFORD, and WILLIAM BROWN, Jr., for appellant.

A. P. WRIGHT, A. C. NORTON, and M. E. WRIGHT, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On October 2, 1896, the Chicago and Alton Railroad Company, the appellant, operated a railroad running in a south-westerly direction through the village of Odell. Hamilton street in that village ran east and west and crossed the tracks at about right angles. There were double main tracks and a side-track. The west track was a main track for north-bound trains. The next track east was a track for south-bound trains, and east of them was the side-track. On that day Ole B. Thompson approached this Hamilton street crossing on foot from the east as a north-bound freight train was passing over the crossing on the west track,—the farthest track from him. There was a south-bound freight train approaching the crossing from the north on the other main track nearer

to him, but he failed to notice it, and, without looking to see whether a train was approaching on that track, walked directly upon it about the time that the way car of the north-bound train in front of him on the other track was at the crossing. Just as he was stepping upon the track the engine struck him, and he was thrown in the air to about the height of the top of a box car and was projected forward, turning over and over for about sixty feet, and was instantly killed. He left a widow and six children, and another child was born after his death. Appellee was appointed administrator of his estate, and brought this suit to recover damages to his next of kin occasioned by his death.

The original declaration contained seven counts, and the court sustained demurrers to the first, fourth and sixth. Eight additional counts were filed, which were substantial repetitions of each other, and the court required plaintiff to designate four of them upon which he would proceed. The plaintiff took the odd numbered ones,—the first, third, fifth and seventh,—and the rest were struck out. The court then sustained a demurrer to the fifth additional count, and after the evidence was in instructed the jury to find the defendant not guilty on said first, third and seventh additional counts, so that they were all finally out of the way. The jury returned a verdict of guilty under the second, third, fifth and seventh counts of the original declaration. Judgment was entered on the verdict, and the Appellate Court has affirmed the judgment.

The principal complaint is, that the court refused to direct a verdict of not guilty, as requested by the defendant at the close of the evidence for the plaintiff and again at the close of all the evidence. This assignment of error raises the question whether there was before the jury evidence fairly tending to establish the ultimate facts necessary to a cause of action. The question whether the jury decided in accordance with the weight

of the evidence is one which rests with the trial court
and the Appellate Court, and the decision of the Appel-
late Court has settled that question in this case. The
counts of the declaration upon which the court refused
to direct the verdict of not guilty, each charged the de-
fendant with negligence in the operation of the train and
alleged the exercise of due care by the deceased. The
second charged negligence and carelessness in the opera-
tion of the train, in general terms. The third charged
such negligent and careless operation in like manner,
and added a charge that the defendant so negligently
and carelessly obstructed the view of the tracks by rail-
road cars, cabooses and telegraph poles, that persons in
the exercise of due care and diligence could not see up
and down the tracks without stepping upon the tracks.
This count was amended upon the trial by adding smoke
and steam as negligent obstructions to the view. The
fifth charged failure to ring the bell or blow the whistle
eighty rods before reaching the crossing. The seventh
charged negligence in running the train at the high rate
of speed of thirty miles an hour over the crossing, which
was alleged to be habitually used as a footway and drive-
way over the tracks. There was evidence which fairly
tended to sustain the charges of negligent operation of
the train. It was agreed at the trial that Odell had a
population of about 1000; that the crossing was near the
center of the village and was the one most used, and
there was testimony that the train was running about
thirty miles an hour. This was controverted at the trial
by other testimony, but in considering this question it
must be assumed that the jury might rightfully believe
the witnesses fixing that rate of speed. There is the
further fact that Thompson was thrown into the air and
whirled over and over for a distance of sixty feet, and
every-day knowledge would authorize an inference from
that fact as to the speed of the train which struck him.
There was also evidence that the statutory signals were

not given,—and here, again, we cannot consider the testimony in contradiction of such evidence. The evidence of failure to give the statutory signals tended to sustain the negligence charged in the fifth count, and the evidence of the rate of speed also tended to establish a high and dangerous rate under the circumstances, and to sustain the charges of the other counts. There was no evidence which tended to sustain the charge of negligence in the obstruction of the view. Telegraph poles, with the projecting arms for the support of wires, are indispensable to the business of a railroad, and it is no more negligence to have them than it is to have the railroad, which could not be carried on without them. So, also, of smoke and steam. There could be no negligence in having a fire to make steam, with the resulting smoke. The train could not be run without smoke and steam. The evidence is that it was a clear, still day, and the smoke and steam from the engine of the north-bound train settled down upon the ground because of the condition of the atmosphere, which defendant was not responsible for. There were cars upon the side-tracks, but they were not shown to be unnecessarily or improperly there, and that is the legitimate and proper purpose of a side-track. There must be something further than the mere storing of cars on side-tracks to constitute negligence on the part of a railroad.

The killing of Thompson by the train was admitted, and the remaining question is whether the court could say, as matter of law, that he was not in the exercise of ordinary care for his own safety. There was no dispute at the trial as to the manner in which he walked upon the track where he was struck and killed. After he crossed the side-track he could have seen the approaching train if he had looked. It was in plain sight for a long distance, and he did not look in the direction from which it was coming or give any attention to it. A traveler upon a highway approaching a crossing is required by the law

to use such care as a person of ordinary prudence would exercise under the same circumstances. This ordinarily demands the use of his faculties, and sight and hearing are the senses by which he may discover whether there is a train approaching or not. It was a necessary element of plaintiff's case to prove the exercise of such care, and the conduct of the deceased, with all the surrounding circumstances, was placed before the jury. The evidence showed that the north-bound train was passing on the further track, with the usual noise attendant upon a freight train, and it is evident that the attention of the deceased was attracted by that train. It is not a rule of law that the omission of the duty to look and listen will bar a recovery where there are facts excusing the performance of that duty, (Elliott on Railroads, sec. 1166,) and it is the settled rule of this court that it cannot be said, as a matter of law, that a person is in fault in failing to look and listen if misled without his fault or where the surroundings may excuse such failure. (*Pennsylvania Co.* v. *Frana,* 112 Ill. 398; *Chicago and Northwestern Railway Co.* v. *Dunleavy,* 129 id. 132; *Terre Haute and Indianapolis Railroad Co.* v. *Voelker,* id. 540; *Chicago and Northwestern Railway Co.* v. *Hansen,* 166 id. 623.) The jury were to determine, as a question of fact, in view of all the surroundings, whether the deceased was guilty of negligence in failing to look and listen for the other train. Whether these circumstances relieved him from the duty of looking and listening required the submission of the case to the jury, and there was no error in refusing to give the peremptory instruction.

We do not find any prejudicial error in the admission or exclusion of evidence.

Upon the cross-examination of plaintiff the court excluded the question whether the deceased was a drinking man, and it is urged that this bore upon the question of his care at the time of his accident. He was seen by a considerable number of people at and just before the

accident, and if he was under the influence of liquor it was capable of direct proof. Proof of habits of persons is not admissible where there is direct evidence of the circumstances of the accident.

The court permitted a witness to answer, against objection, that there was a horse fair at Odell that day. What was called a horse fair was a sort of market day, when people brought horses to town to sell, and it was in some other part of the town. The evidence was immaterial, since there was no claim that the defendant knew that people were trading or selling horses in town, and the fact had nothing to do with the killing of Thompson; but we do not see how it could do any harm.

The court sustained objections to questions of defendant as to whether a witness knew of any reason why the deceased had not the same opportunity of seeing the train approaching as the witness had. Defendant was allowed to show that there was nothing whatever to prevent deceased seeing the train if he had looked in that direction, and that there was nothing between the side-track and the train to obstruct his view. The fact was proved, and answers to the questions would not have added anything to it.

The defendant asked the court to submit to the jury four questions for special findings, and the court refused to do so and substituted one prepared by himself. A court may substitute a proper question for a special finding on its own motion. *Chicago and Northwestern Railway Co.* v. *Dunleavy, supra; Norton* v. *Volzke,* 158 Ill. 402.

It is insisted by counsel that the second and fourth questions submitted should have been given. They were as follows: "2. Was what Thompson did, if anything, to ascertain if a train was approaching, what an ordinarily and reasonably prudent man would have done under the same circumstances?" "4. Would an ordinarily and reasonably prudent man, under the circumstances existing at the crossing, have stepped upon the track without

first looking to see if the train was approaching?" The one substituted by the court was as follows: "Was Ole B. Thompson, in view of the physical surroundings at the time of the injury, then in the exercise of ordinary care for his own safety?" This question was answered in the affirmative by the jury. The question submitted related to the ultimate fact, and we do not think there was any error in substituting it.

Objection is made to the first and fourth instructions given at the instance of the plaintiff, which are as follows:

1. "You are instructed that the law did not require of the deceased the exercise of an extraordinary degree of care. All that was required of him was the exercise of ordinary care, and what is ordinary care depends upon the circumstances of each particular case, and is such care as a person of ordinary prudence and intelligence would usually exercise under the same or similar circumstances."

4. "You are instructed that if you believe, from the evidence, that the defendant's agents or servants in charge of the engine in question omitted to ring the bell or sound the whistle continuously for the distance of eighty rods before reaching the highway crossing, such omission constitutes a presumptive case of negligence on the part of the defendant; and if you further believe, from the evidence, that Ole B. Thompson was struck and injured at the railway crossing in question, as charged in the declaration, in consequence of the omission to ring the bell or sound a whistle, and that he was himself exercising all reasonable care and caution in that behalf for his personal safety, then the defendant is liable to the plaintiff, as administrator, for the loss and damage sustained by the widow and the children of the deceased in their means of support by reason of such injury, if any such loss or damage has been proved."

It is objected to the first that it left the way open for the jury to understand that if Thompson usually exer-

cised the care of an ordinarily prudent person that would be sufficient, although he might not have done so in the particular instance when the accident occurred. We do not think it will admit of such an interpretation, but that it required him to exercise on that occasion the care which a person of ordinary prudence would have exercised under the same or similar circumstances. It is said that the question involved was the kind of care a person of ordinary prudence exercises when acting prudently, and that the care an ordinarily prudent person usually exercises may be a very different kind and degree of care from that which a person exercises when acting prudently. We do not think it was subject to the objection. The argument against the fourth is, that it left it to the jury to determine what reasonable care in the premises was. The question what such a degree of care is was repeatedly and fully explained to the jury in other instructions, with all the variations of which language is capable, and they could not have been in the dark as to what it meant.

It is also urged that the verdict is void because it found the defendant guilty under the second, third, fifth and seventh counts while it should have specified one count; that it was not a case where each of the alleged causes of the injury could have combined to cause it. It is said that the several causes were not alleged in combination, but separately, and it would be inconsistent to say that they separately caused it. We fail to see why the defendant could not be guilty of the negligence charged in each of the counts, or why the verdict should be void because the jury so found.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. Justice Magruder: I concur in the conclusion reached by this opinion, but not in all the reasoning of the opinion, nor in all of the language and expressions which embody the views announced.